WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri Lynn Watkins,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　　Defendant. | No. CV 11-0282-TUC-BPV<br><br>**ORDER** |

Plaintiff applied for supplemental security income (SSI) on December 21, 2007, alleging disability due to depression, fibromyalgia, and arthritis. Tr. 106-116. The application was denied initially, (Administrative Transcript (Tr.) 51, 53-56), on reconsideration, (Tr. 52, 59-62), and after an administrative hearing before an Administrative Law Judge (ALJ) held on April 20, 2009, (Tr. 24-50). The ALJ issued a written decision on February 22, 2010, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 12-19. This decision became the final decision for purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied review. Tr. 1.

Plaintiff now brings this action for review of the final decision of the

Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The United States Magistrate Judge has received the written consent of both parties, and, accordingly, presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73.

After considering the record before the Court and the parties' briefing of the issues, the Court will reverse Defendant's decision and remand for an immediate award of benefits.

### I.   BACKGROUND

Plaintiff alleges an onset of disability of December 3, 2003. Plaintiff was born in 1961, and was 46 years old as of the date of Plaintiff's SSI application. Plaintiff dropped out of high school, but received her GED. Plaintiff reported alcohol and drug abuse problems from her early teen years, but these had been in remission prior to her alleged onset date. Plaintiff worked most recently as a cashier at a plant nursery, and prior to that at a retail store ordering and stocking merchandise, and helping customers. Plaintiff's onset of depression was coincidental with her decline in physical health, reporting a worsening of symptoms a few years before her alleged onset date. Plaintiff takes fluoxetine for depression, gabapentin, morphine and Roxicet for pain, and promethazine for nausea.

### II.   STANDARD OF REVIEW

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court will set aside a denial of benefits only if the Commissioner's findings are based on

legal error or are not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir, 1982)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'" *Smolen*, 80 F.3d at 1279 (quoting *Perales*, 402 U.S. at 401 and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal citations omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

### III.  DISCUSSION

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she has not worked since the alleged disability onset date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing her past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. § 416.920(a).

In her decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 21, 2007, the date of application. Tr. 14. At step two, the ALJ

found Plaintiff had fibromyalgia and depression, impairments that were "severe" pursuant to the regulations. Tr. 14. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 14-15.

The ALJ found Plaintiff had the RFC to perform light work with the additional limitation of a sit/stand option, and avoidance of hazards. Tr. 16. The ALJ found that Plaintiff's pain and depression both were controlled by medication without significant adverse side effects. At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a stock department head.  Tr. 18. The ALJ considered testimony by a vocational expert in making a determination that there are jobs in the national economy that Plaintiff could perform. Tr. 18. Therefore, the ALJ found Plaintiff was not disabled since December 21, 2007. Tr. 19.

Plaintiff argues that the ALJ erred by (1) failing to properly assess the relative weight of the medical evidence, particularly by failing to give controlling weight to the opinion of the only treating specialist, in determining Plaintiff's RFC; and (2) violating SSR 00-4p by failing to inquire of the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles (DOT). Plaintiff contends that the Court should exercise its discretion to reverse and remand for a finding of disability, or, alternatively, for further administrative proceedings.

The Commissioner responds, arguing that the ALJ 1) provided specific and legitimate reasons for not affording significant weight to the treating specialist; 2) provided specific, clear and convincing reasons for finding that Plaintiff's subjective

complaints were not credible; 3) performed a proper assessment of Plaintiff's RFC; 4) substantial evidence supports the ALJ's finding that Plaintiff could perform work which exists in significant numbers in the national economy. Defendant in the record as a whole supports the ALJ's decision that Plaintiff was not disabled, and that if the Court finds error, such error would not warrant remand for payment of benefits.

A. <u>Step Four: Residual Functional Capacity Determination</u>

The ALJ found Plaintiff had the RFC to perform light work with the additional limitation of a sit/stand option, and avoid hazards. Tr. 16. In doing so, the ALJ gave "some weight" to the opinion of the State Agency reviewer John B. Kurtin, "some weight" to Plaintiff's treating physician Dr. Iannini regarding environmental limitations and Plaintiff's need to alternate positions, gave "great weight" to the psychological consultative examiner, and found Plaintiff to be not credible.

The ALJ found that, "[t]he claimant's pain in her joints, neck, back, elbows, hands, knees, ankle, abdomen and hips are moderate but are controlled by appropriate medication without significant adverse side effects." Tr. 16. The ALJ also stated that "[t]he claimant's depression is moderate but is controlled by appropriate medication without significant adverse side effects." Tr. 16.

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinion of the only treating specialist and ignored evidence of significant limitations in activities of daily living.[1] The Commissioner responds that the ALJ provided specific and

---

[1] Plaintiff does not contend, as the Commissioner responds, that the ALJ improperly discredited Plaintiff's testimony. Accordingly, the Court reviews Plaintiffs

- 5 -

legitimate reasons for not affording significant weight to the treating specialist, provided specific, clear and convincing reasons for finding that Plaintiff's subjective complaints were not credible and performed a proper assessment of Plaintiff's RFC that is supported by substantial evidence and free of harmful legal error.

### 1. *Evaluation of Medical Source Opinions*

#### a. Treating Rheumatologist Dr. Iannini

The ALJ found that Dr. Iannini did not provide any objective evidence to support his opinion that Plaintiff can sit, stand, or walk less than 2 hours in an 8-hour workday, lift and carry less than 10 pounds, has markedly limited ability for handling, and needs to be able to lie down during the day. Tr. 16 The ALJ did adopt Dr. Iannini's opinion that Plaintiff is restricted from working around heights or moving machinery, and driving or operating machinery. Tr. 16 The ALJ also found that Plaintiffs activities of daily living reflect that she is capable of performing at a higher exertional level than Dr. Iannini indicated. Tr. 16.

Treating physician's opinions are given great weight based on the fact that they are employed to cure, and also on their greater opportunity to observe and know the patient as an individual. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Thus, "the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing' reasons.' " *Carmickle v. Commissioner*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). Clear

---

testimony only for evidence to support the ALJ's contention that Plaintiff's activities of daily living reflect that she is capable of performing work at a higher exertional level than Dr. Iannini indicated.

- 6 -

and convincing reasons are also required to reject a treating doctor's ultimate conclusions. *Lester*, 81 F.3d at 830 (citing *Embry v. Bowen*, 849 F.2d 418, 422(9th Cir. 1988)). Where such an opinion is contradicted, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Carmickle*, 533 F.3d at 1164 (citing *Murray*, 722 F.2d at 502). When rejecting the opinion of a treating physician, the ALJ can meet this " 'burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn*, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). Treating source medical opinions are still entitled to deference and, "[i]n many cases, will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; *see also Murray*, 722 F.2d at 502 ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

Here, Dr. Iannini's opinion was contradicted by the opinion of consultative examiner John Kurtin. See Tr. 209-16. As noted by Plaintiff, there is no indication in the record of whether John Kurtin is a licensed medical doctor or his field of expertise or

practice. Tr. 216. The "Medical Consultant's Code Section" of the document has been left blank. *Id*. The ALJ referred to this evidence as being provided by the State Agency, rather than a licensed medical doctor. Medical consultant, John Fahlberg, MD., affirmed the "initial light RFC," but did not indicate what medical evidence, if any, he reviewed in reaching this conclusion. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831; *see also Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008). Though the Court finds that, in this case, the medical consultants' opinions do not constitute substantial evidence to justify rejecting Dr. Iannini's opinion, in and of themselves, they do establish the existence of a contradictory opinion that determines the burden the ALJ must meet in rejecting Dr. Iannini's opinion; the ALJ must offer specific and legitimate reasons supported by substantial evidence to reject Dr. Iannini's opinion.

The first reason the ALJ provides for rejecting Dr. Iannini's opinion is not legitimate. The Court finds that it was error for the ALJ to give Dr. Iannini's opinion less than controlling weight on the basis of the lack of objective evidence to support his opinion. Fibromyalgia "causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissues." *Benecke v. Barnhart,* 379 F.3d 587, 589 (9th Cir. 2004) (citations omitted). Common symptoms of fibromyalgia include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and sleep disturbance. *Id.* at 589-590. "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community." *Benecke,* 379 F.3d at 590.

*See also Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996) (fibromyalgia is "a common, but elusive and mysterious disease...") Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke,* 379 F.3d at 590. Although "[t]he American College of Rheumatology issued a set of agreed upon diagnostic criteria in 1990,...there are no laboratory tests to confirm the diagnosis." *Id.* With regard to Plaintiff's fibromyalgia, the ALJ erred in effectively requiring "objective evidence for a disease that eludes such measurement." *Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2nd. Cir. 2003) (reversing and remanding for an award of benefits where the plaintiff was disabled by fibromyalgia)." *Benecke,* 379 F.3d at 594. *See also Rogers v. Comm'r. of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007) (rejecting ALJ's credibility finding where, *inter alia,* the ALJ cited lack of objective medical evidence and that Plaintiff exhibited normal reflexes and normal sensory testing because "the nature of fibromyalgia itself renders...over-emphasis upon objective findings inappropriate.") (*citing Canfield v. Comm'r. of Soc. Sec.,* 2002 WL 31235758 (E.D. Mich. Sept. 13, 2002) (it would be "nonsensical to discount a fibromyalgia claimant's subjective complaints of pain based upon lack of objective medical evidence, as such evidence is generally lacking with fibromyalgia patients."); *Sarchet,* 78 F.3d at 307 (recognizing that the absence of objective evidence of fibromyalgia such as swelling of the joints "is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). Given that no objective tests can conclusively confirm the disease, the lack of abnormal tests does not undermine Dr. Iannini's opinion.

The ALJ's second reason for rejecting Dr. Iannini's opinion, that Plaintiff's activities of daily living reflect that she is capable of performing work at a higher level than Dr. Iannini has indicated, could, however, be a legally sufficient basis on which to reject the treating physician's testimony if supported by substantial evidence. *See* 20 C.F.R. § 404.1527 (c)(4)(Consistency of medical opinion with the record as a whole is one of several factors considered in deciding the weight to give to any medical opinion); *See also Magallanes*, 881 F.2d at 754 (Conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion in favor of that offered by non-treating, non-examining physician); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999)(upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion);

To the extent that the ALJ rejected Dr. Iannini's opinion because it was inconsistent with Plaintiff's reports of activities of daily living, the ALJ relied on Dr. Iannini's treatment note reporting that Plaintiff was "performing all activities of daily living and remains active, caring for 30 horses a day," from October, 2006, prior to the date of Plaintiff's application for SSI. While Plaintiff suggests that this remark was, at best, an outlier, and possibly a typographical error, Dr. Iannini's report dispels any notion that it was a typographical error by reporting in September, 2008 that Plaintiff was no longer able to work at the horse stables. Tr. 329. This report also refutes the ALJ's reliance on an apparent conflict between Plaintiff's ability to care for horses, which took place prior to the date of Plaintiff's applications, and Dr. Iannini's opinions regarding her

limitations after the date of application, because Dr. Iannini's RFC assessment was completed on August 5, 2009, after Dr. Iannini's treatment notes indicated Plaintiff was no longer able to care for the horses.

The ALJ identified further conflicts between Plaintiff's testimony of her own limitations and Dr. Iannini's opinion. The ALJ noted that Plaintiff stated she does all the housekeeping, goes shopping, and pumps her own gasoline, is able to do the laundry, dishes, and dusting, and enjoys reading, watching TV and playing Sudoko. Plaintiff, qualified her ability to do almost all of these activities, however, with significant durational limitations. Though Plaintiff does housekeeping and laundry, she does it only when she "feel[s] good enough, maybe once a week," and works "no longer than an hour at a time" and her son "helps with everything." Tr. 119. Though she reads and watches television, she "usually fall[s] asleep while doing these." Tr. 121. She cooks or prepares meals, but only for "minutes" and no longer has "the energy to prepare an entire meal." Tr. 119. These activities, which demonstrate that Plaintiff is capable of performing activities of daily living, but not of any sustained duration, do not necessarily conflict with Dr. Iannini's opinion, which indicated that she is able to perform activities involving sitting, standing and walking less than 2 hours in an 8-hour workday and with restrictions involving the ability to lift and carry, as well as handle, and limitations requiring Plaintiff to lie down during the day, and to alternate sitting and standing every hour. Thus, Plaintiff's testimony as to her own limitations reflect she is capable of performing work at a higher exertional level than Dr. Iannini indicated only if claimant's testimony regarding how long she is able to persevere in these activities is ignored. Here, the ALJ

failed to evaluate Plaintiff's "ability to work on a sustained basis." *Lester*, 81 F.3d at 833 (quoting 20 C.F.R. § 404.1512(a)). "Occasional symptom-free periods-and even the sporadic ability to work-are not inconsistent with disability." *Id.* (citing *Leidler v. Sullivan*, 885 F.2d 291, 292 n. 3 (5th Cir.1989); *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C.Cir.1987)). Neither are Plaintiff's reports of sporadic activity inconsistent with Dr. Iannini's consideration of Plaintiff's ability to perform work on a sustained basis.

Accordingly, the undersigned finds that the ALJ's stated reasons for giving little weight to Dr. Iannini's opinion is neither legitimate, nor supported by substantial evidence in the record. Furthermore, the ALJ's decision indicates that he did not consider all of the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6). Though the ALJ's consideration of Plaintiff's activities of daily living that may contradict Dr. Iannini's opinion are appropriately considered in determining the weight that should be given to Dr. Iannini's opinion. 20 C.F.R. § 404.1527(c)(4), it is not the only factor to be considered. Determination of the weight to afford Dr. Iannini's opinion requires consideration of (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of Dr. Iannini's opinion; (3) the consistency of the opinion and the record as a whole; (4) whether Dr. Iannini is a specialist, and; (5) other factors that would support or contradict Dr. Iannini's opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

The only rheumatologist to examine Plaintiff[2], Dr. Iannini had diagnosed Plaintiff

---

[2] Rheumatology is the relevant specialty for fibromyalgia. *Benecke*, 379 F.3d at 594, n.4. A "rheumatologist's opinion is given greater weight than those of ... other

- 12 -

at the latest by October, 2006 and treated her through at least the date of the hearing before the ALJ. In detailed treatment notes, he documented, the findings of Plaintiff's physical examinations, including positive examination for multiple tender points, Plaintiff's reports about her symptoms[3], his observations of same, and Plaintiff's responses to various medication, supplements and treatments. He prescribed an array of medications, administered trigger point injections, and referred Plaintiff to a nurse practitioner for further treatment and injections of her knees with Synvisc.

When all factors are considered, the Court finds that the ALJ has not set forth specific and legitimate reasons supported by substantial evidence to reject Dr. Iannini's opinion. Dr. Iannini's opinion, therefore, is credited as a matter of law.

*2. Vocational Expert Testimony*

Plaintiff argues that the ALJ violated SSR 00-4p by failing to inquire of the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles (DOT). The Ninth Circuit has made clear that if a conflict exists between the VE's testimony and the DOT, "the ALJ must ... determine whether a basis exists for relying on the expert rather than the [DOT]." *Massachi v. Astrue*, 486 F.3d. 1149, 1153 (9th Cir. 2007). An ALJ has an affirmative responsibility to ask about any possible conflict

---

physicians because it is an 'opinion of a specialist about medical issues related to his or her area of specialty.' " *Id*. (quoting 20 C.F.R. § 404.1527). Specialized knowledge is "particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." *Id*

[3] A "patient's report of complaints or history[ ] is an essential diagnostic tool." *Green-Younger*, 335 F.3d at 107; *see also Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir.1998) (disagreeing with ALJ's rejection of physician's opinion for relying on subjective complaints because chronic fatigue syndrome is primarily evaluated on the basis of plaintiff's subjective complaints).

between evidence provided by the vocational expert and information provided in the DOT. *Id*. If so, the ALJ must inquire whether there is a reasonable explanation for the conflict. *Id*. at 1153-54. Failing to make such an inquiry is error. Such procedural error can be harmless, however, if there is no conflict, or if the vocational expert provides sufficient support for her conclusion so as to justify any potential conflict. *Id*. at 1154, n.19.

Here, the ALJ failed to make the required inquiry. Plaintiff, however, has failed to demonstrate any conflict between the vocational expert's testimony and the DOT. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted). Plaintiff has not met her burden of demonstrating harm or prejudice. Accordingly, the Court finds any error by the ALJ to inquire of potential conflicts in the vocational expert's testimony harmless in this instance.

### IV.    APPROPRIATE REMEDY ON REMAND

Plaintiff argues that the appropriate remedy is to remand the case for an award of benefits. The decision to remand for further development of the record or for an award of benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834; *Harman*, 211 F.3d at 1178 (same); *Benecke*, 379 F.3d at 594 ("Because the ALJ failed to provide legally sufficient

reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true.").

This Circuit has held that an action should be remanded for an award of benefits where the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *See, e.g., Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988) (*Varney II*).

The ALJ improperly rejected Dr. Iannini's opinion that Plaintiff could work less than 2 hours in an 8-hour day. The vocational expert testified that Iannini's residual functional capacities equate to less than full-time work and less than sedentary work, and therefore there would be no jobs in the national economy that Plaintiff could perform if Dr. Iannini's opinions were controlling. Tr. 49.

The Court concludes that Dr. Iannini's opinion should have been credited. Because it is clear that the ALJ would be required to find Plaintiff disabled if Dr. Iannini's opinion is credited, *see Benecke*, 379 F.3d at 593-95, the Court will remand the case for an award of benefits. *See Orn*, 495 F.3d at 640 (remanding for an award of benefits where it was "'clear from the record that the ALJ would be required to determine the claimant disabled'") (citation omitted). A remand for further proceedings is not warranted.

//

//

Accordingly,

IT IS ORDERED:

1. Defendant's decision denying benefits is reversed.

2. The case is remanded to Defendant for an award of benefits.

3. The Clerk is directed to enter judgment accordingly.

Dated this 27th day of June, 2012.

_____
Bernardo P. Velasco
United States Magistrate Judge